**IN RE: RUE21, INC., et al.,[1] Debtors.**

**rue21, inc., et al., Movants,**

**v.**

**Official Committee of Unsecured Creditors, et al.,[2] Respondents.**

**Case No. 17–22045 (GLT)**

United States Bankruptcy Court, W.D. Pennsylvania.

Signed 9/8/2017

---

1. The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: rue21, inc. (1645); Rhodes Holdco, Inc. (6922); r services llc (9425); and rue services corporation (0396). The location of the Debtors' service address is: 800 Commonwealth Drive, Warrendale, PA 15086.

2. The other respondents are: PREIT Services, LLC, The State of Michigan, Department of Treasury, Aronov Realty Management, Brixmor Property Group, Inc., ShopOne Centers REIT, Inc., UBS Realty Management, and Weitzman Management Corporation, Los Lunas Investors, LLC CBL & Associates Management, Inc., Bloomfield Holdings, LLC, IR-EIT Louisville Dixie Valley, L.L.C., IREIT West Valley City Lake Park, L.L.C., Yuma Palms LeaseCo, L.L.C., Honey Creek DST,

IRC Bradley Commons, L.L.C., IRC Goldenrod Marketplace II, L.L.C., IRC Stone Creek, L.L.C., IRC Timmerman Plaza, L.L.C., KRG Aiken Hitchock, LLC, KRG Plaza Green, Leeds Retail Center, LLC, Duluth (Gwinnett) SSR, LLC, 3503 RP Jackson Columns, L.L.C., 3503 RP Summerville Azalea Square, L.L.C., 3503 RP Waco Central Limited Partnership, Inland Western Spartanburg, L.L.C., RPAI Lakewood, L.L.C., RPAI Mansfield Limited Partnership, RPAI McDonough Henry Town, L.L.C. and WHLR–Village of Martinsville, LLC, Bloomfield Holdings, LLC, 3503 RP Jackson Columns, L.L.C., 3503 RP Waco Central Limited Partnership, RPAI Lakewood, L.LC., and RPAI McDonough Henry Town, L.L.C., ARC NPHUBOH001, LLC, Centennial Real Estate Company, LLC, C.E. John Company, Inc., Deutsche Asset & Wealth Management, Foursquare Properties, Inc., Gem Realty Capital, Inc., KRE Colonie Owner, LLC, The Macerich Company, PGIM Real Estate, Southgate Mall Associates, LLP, Starwood Retail Partners LLC, and Vintage Real Estate, LLC, Coventry III/Satterfield Helm Valley Fair, LLC, Mt. Pleasant Shopping Center, LLC, Adrian Acquisition, LLC, Merle Hay Investors, LLC, and Capital Mall JC 1, LLC, Surprise Marketplace Holdings, Weingarten Realty Investors, Weingarten 1–4 Clermont Landing, LLC, WRI Alliance Riley Joint Venture, and WRI Mueller, LLC, Experian Marketing Solutions, Inc., Landlords DDR Corp., DLC Management Corp., GGP Limited Partnership, Gregory Greenfield & Associates Ltd., Jones Lang LaSalle Americas, Inc., Northwest Capital Investment Group, LLC, Regency Centers Corp., Rouse Properties, LLC, ShopCare Properties, LP, and Woodmont Companies, Winthrop Resources Corporation, Spinoso Real Estate Group, Washington Prime Group Inc.

Shireen A. Barday, Robert A. Britton, Jonathan S. Henes, George Klidonas, Kirkland & Ellis LLP, New York, NY, A. Katrine Jakola, Kirkland & Ellis LLP, Chicago, IL, Jared S. Roach, Eric A. Schaffer, Reed Smith LLP, Theodore A. Schroeder, Littler Mendelson, P.C., Pittsburgh, PA, for Debtor.

Heather A. Sprague on Behalf of the United States Trustee by Office of the United States Trustee, Pittsburgh, PA, for U.S. Trustee.

John R. Gotaskie, Jr., Fox Rothschild LLP, Pittsburgh, PA, Cathy Hershcopf, Jay Indyke, Michael Klein, Lauren Reichardt, Max Schlan, Ian Shapiro, Seth Van Aalten, Cooley LLP, New York, NY, Jeffrey M. Schlerf, Fox Rothschild LLP, Wilmington, DE, for Creditor Committee.

Related to Docket Nos. 695 and

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

THE HONORABLE GREGORY L. TADDONIO, UNITED STATES BANKRUPTCY JUDGE

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), having:

a. commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on May 15, 2017 (the "Petition Date");

b. continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed, on June 1, 2017, (i) the *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 316], which plan and related documents were subsequently amended, (ii) the *Disclosure Statement for the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 315], which disclosure statement and related documents were subsequently amended, and (iii) the *Debtors' Mo-*

*tion for Entry of an Order (I) Approving the Disclosure Statement for the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, (II) Approving Certain Dates Related to Plan Confirmation, (III) Approving Procedures for Soliciting, Voting, and Tabulating Votes On, and for Filing Objections to, the Plan and Approving the Forms of Ballots and Notices, and (IV) Granting Related Relief* [Docket No. 314];

d. filed, on July 12, 2017, (i) the *Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan") [Docket No. 695]; and (ii) the *First Amended Debtors' Disclosure Statement for the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement") [Docket No. 697];[3]

e. caused solicitation materials and notice of the deadline for objecting to confirmation of the Plan to be distributed by July 21, 2017, and continuing thereafter, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Disclosure Statement Order (as defined herein), which Disclosure Statement Order also approved, among other things, solicitation procedures (the "Solicitation Procedures") and related notices, forms, Ballots, and Master Ballots (collectively, the "Solicitation Packages"), as evidenced by, among other things, the *Amended*

*Certificate of Service of P. Joseph Morrow IV for Solicitation Materials in Connection with the Amended Chapter 11 Plan* [Docket No. 844];

f. included in the Solicitation Packages a letter supporting the Debtors' Plan from the Official Committee of Unsecured Creditors (the "Committee Letter of Support");

g. caused notice of the Confirmation Hearing (the "Confirmation Hearing Notice") to be published on August 3, 2017 in *USA Today* (National Edition); the *Pittsburgh Post–Gazette* as evidenced by the *Affidavits of Publication of the Notice of (I) the Solicitation and Voting Procedures, (II) the Confirmation Hearing, and (III) the Plan Objection Deadline to All Holders of Claims and Interests and Parties in Interest* filed on August 10, 2017 [Docket Nos. 852, 853];

h. filed, on August 7, 2017, the *Notice of Filing of Assumed Executory Contract and Unexpired Lease Schedule* [Docket No. 836];

i. filed, on August 11, 2017, the *Notice of Filing of Plan Supplement* [Docket No. 871], which included the following documents: (i) New Organizational Documents; (ii) Schedule of Retained Causes of Action; (iii) the identity of the New Board for the Reorganized Debtors; (iv) that certain Commitment Letter dated August 5, 2017, among the Debtors, Bank of America, N.A. ("Bank of America"), and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPFS") (as amended and re-

---

3. Unless otherwise noted, capitalized terms not defined in this *Findings of Fact, Conclusions of Law, and Order Confirming Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (this "Confirmation Order") shall have the meanings ascribed to them in the Plan (as defined herein). The rules of interpretation set forth in **Article I.B** of the Plan shall apply to this Confirmation Order.

stated pursuant to that certain Amended and Restated Commitment Letter dated August [24], 2017, among the Debtors, Bank of America and MLPFS, and as otherwise amended, restated, amended and re-stated, supplemented or otherwise modified prior to the date hereof, the "Exit ABL Commitment Letter"), in-cluding a term sheet reflecting the the Exit ABL Credit Agreement; (v) the term sheet reflecting the Exit Term Loan Credit Agreement; and (vi) the Description of Transaction Steps (the "Plan Supplement");

j. filed, on August 14, 2017, the *Notice of Filing of First Amended Assumed Executory Contract and Unexpired Lease Schedule* [Docket No. 877];

k. filed, on August 21, 2017, the *Analysis of Potential Estate Claims Prepared for the Independent Committee of the Board of Directors of rue21, inc.* [Docket No. 914];

l. filed, on August 23, 2017, the *Notice of Filing of First Supplemental Assumed Unexpired Lease Schedule* [Docket No. 944];

m. filed, on August 24, 2017, the *Notice of Filing of Second Supplemental Assumed Unexpired Lease Schedule* [Docket No. 947];

n. filed, on August 24, 2017, the *Declaration of Adam Gorman on Behalf of Kurtzman Carson Consultants Regarding Voting and Tabulation of Ballots Accepting and Rejecting Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 957] (as may be amend-ed, modified, or supplemented, the "Voting Certification");

o. filed, on August 24, 2017, the *Debtors' (I) Memorandum of Law In Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization of Pursuant to Chapter 11 of the Bankruptcy Code and (II) Omnibus Reply to Objections Thereto* [Docket No. 956] (the "Confirmation Brief");

p. filed, on August 24, 2017, the *Notice of Filing of Proposed Findings of Fact, Conclusions of Law, and Order Confirming the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 953];

q. filed, on August 24, 2017, the *Declaration of Stephen L. Coulombe in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 954] (the "Coulombe Confirmation Declaration");

r. filed, on August 24, 2017, the *Declaration of Jonathan Brownstein in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 955] (the "Brownstein Confirmation Declaration");

s. filed, on August 25, 2017, the *Notice of Filing of Third Supplemental Assumed Unexpired Lease Schedule* [Docket No. 978];

t. filed, on August 28, 2017, the *Notice of Filing of Second Amended Assumed Unexpired Lease Schedule* [Docket No. 984];

u. filed, on August 28, 2017 the *Notice of Filing of Third Amended Assumed Unexpired Lease Schedule* [Docket No. 996]

v. filed, on August 28, 2017, the *Declaration of Neal Goldman in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11*

*of the Bankruptcy Code* [Docket No. 987] (the "Goldman Confirmation Declaration");

w. filed, on August 28, 2017, the *Supplemental Declaration or Stephen L. Coulombe in Support of Debtors' (I) Memorandum in Support of Confirmation of the debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code and (II) Omnibus Response to Objections Thereto* (the "Supplemental Coulombe Declaration);

x. filed, on August 29, 2017 the *Notice of Filing Second Amended Assumed Executory Contract Schedule* [Docket No. 1008]; and

This Court having:

a. entered the *Order (I) Approving the Disclosure Statement for the Debtors' First Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code; (II) Approving Certain Dates Related to Plan Confirmation; (III) Approving Procedures for Soliciting, Voting, and Tabulating Votes On, and for Filing Objections to, the Plan and Approving the Forms of Ballots and Notices; and (IV) Granting Related Relief* [Docket No. 719] (the "Disclosure Statement Order");

b. set August 21, 2017 at 5:00 p.m. prevailing Eastern Time, as the deadline for filing objections to the Plan (the "Plan Objection Deadline");

c. set August 21, 2017, at 5:00 p.m. prevailing Eastern Time, as the deadline for voting on the Plan;

d. set August 29, 2017, at 2:00 p.m. prevailing Eastern Time, as the date and time for the confirmation hearing (the "Confirmation Hearing") pursuant to Bankruptcy Rules 3017

and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code; and rescheduling the Confirmation hearing to August 30, 2017, at 11:00 a.m. prevailing Eastern Time;

e. reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Confirmation Declaration, the Voting Certification, the Committee Support Letter, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

f. held the Confirmation Hearing;

g. heard the statements, arguments, and objections made by counsel in respect of Confirmation;

h. considered all testimony, documents, filings, and other evidence admitted at Confirmation; and

i. overruled any and all objections to the Plan and to Confirmation and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein.

NOW, THEREFORE, this Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation has been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and all evidence proffered or adduced by counsel at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, this Court hereby makes and issues

the following Findings of Fact and Conclusions of Law:

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

### A. Findings and Conclusions.

1. The findings and conclusions of law set forth herein and on the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

### B. Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)).

2. This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a Final Order determining that the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

### C. Eligibility for Relief.

3. The Debtors are entities eligible for relief under section 109 of the Bankruptcy Code.

### D. Notice and Transmittal of Solicitation Materials; Adequacy of Solicitation Notices.

4. The Plan, the Disclosure Statement, the Disclosure Statement Order, the ballots for voting on the Plan (the "Ballots"), the Confirmation Hearing Notice, the Plan Supplement, and the other materials distributed by the Debtors in connection with Confirmation of the Plan (collectively, the "Confirmation Materials") were transmitted and served in compliance with (i) Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, (ii) Local Bankruptcy Rules of the United States Bankruptcy Court for the Western District of Pennsylvania ("W.PA.LBR"), and (iii) procedures set forth in the Disclosure Statement Order. Notice of the Confirmation Hearing was appropriate and satisfactory based upon the circumstances of the Debtors' Chapter 11 Cases. The transmittal and service of the Confirmation Materials complied with the approved Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the W.PA.LBR, and any other applicable rules, laws, and regulations. Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

### E. Voting.

5. On August 24, 2017, the Debtors' filed the Voting Certification with this Court. As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures, and the W.PA. LBR.

### F. Good–Faith Solicitation (11 U.S.C. § 1125(e)).

6. Based on the record before this Court in the Chapter 11 Cases, the Debtors, each

of the Restructuring Support Parties and their respective members, directors, managers, officers, employees, representatives, attorneys, financial advisors, investment bankers, agents, restructuring advisors, and other professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Solicitation Procedures, the Bankruptcy Code, the Bankruptcy Rules, and the W.PA.LBR in connection with all of their respective activities relating to the solicitation of acceptances of the Plan, their participation in the Chapter 11 Cases, and the activities described in section 1125 of the Bankruptcy Code, and therefore are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

### G. Plan Supplement.

7. The filing and notice of the Plan Supplement were proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and no other or further notice is or shall be required. The documents contained in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.

### H. Modifications to the Plan.

8. Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan since the commencement of solicitation described or set forth herein constitute technical changes or changes with respect to particular Claims made pursuant to the agreement of the holders of such Claims and do not materially or adversely affect or change the treatment of any other Claims or Interests. Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

9. This Confirmation Order contains modifications to the Plan that were made to address objections and informal comments received from various parties-in-interest. Modifications to the Plan since the entry of the Disclosure Statement Order, if any, are consistent with the provisions of the Bankruptcy Code. The disclosure of any Plan modifications prior to or on the record at the Confirmation Hearing constitutes due and sufficient notice of any and all Plan modifications. The Plan as modified by this Confirmation Order shall constitute the Plan submitted for Confirmation.

### I. Objections.

10. To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been resolved, withdrawn, waived, or settled prior to entry of this Confirmation Order or otherwise resolved herein or as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits based on the record before this Court.

### J. Burden of Proof.

11. The Debtors, as the proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

### K. Bankruptcy Rule 3016.

12. The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

**L. Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

13. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

    a. Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). As required by section 1123(a)(1), in addition to Administrative Claims, Professional Fee Claims, Priority Tax Claims, DIP ABL Claims, DIP New Money Term Loan Claims, DIP Roll–Up Term Loan Claims, and United States Trustee Statutory Fees, which need not be classified, **Article III** of the Plan designates nine Classes of Claims and Interests. As required by section 1122(a) of the Bankruptcy Code, the Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate among holders of Claims and Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

    b. Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). **Article III** of the Plan specifies that Classes 1, 2, 3, 6 (to the extent reinstated), and 7 (to the extent reinstated) are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

    c. Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). **Article III** of the Plan sets forth the treatment of Classes 4, 5, 6 (to the extent cancelled), 7 (to the extent cancelled), 8, and 9, which are the Impaired Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

    d. No Discrimination (11 U.S.C. § 1123(a)(4)). **Article III** of the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class except to the extent that a holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

    e. Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan and the various documents included in the Plan Supplement provide adequate and proper means for implementation of the Plan, including, without limitation: (i) the execution, filing, and delivery of appropriate agreements or other documents of merger, sale disposition, transfer, consolidation, reorganization, restructuring, liquidation, dissolution, or equity issuance, certificates of incorporation, certificates of conversion, certificates of formation, operating agreements, bylaws, or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan and that satisfy the requirements of applicable law; (ii) the execution and delivery of appropriate instruments of sale, equity issuance, transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (iii) the issuance of the New Equity; (iv) the execution of the New Organizational Documents; (v) the vesting of the Debtors' assets in

the Reorganized Debtors, in each case in accordance with the Plan; (vi) the execution of the Exit Credit Facilities Documents; (vii) such other transactions that are necessary or appropriate to implement the Plan in the most tax efficient manner, including any mergers, sales, dispositions, transfers, consolidations, restructurings, conversions, formations, organizations, dissolutions, or liquidations (including without limitation any of the Restructuring Transactions); and (viii) all other transactions or actions that either (x) the Debtors or (y) the Reorganized Debtors, as applicable, determine are necessary or appropriate to implement the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

f. Non–Voting Equity Securities (11 U.S.C. § 1123(a)(6)). The Plan prohibits the issuance of non-voting securities to the extent that the issuance of non-voting securities is prohibited under section 1123(a)(6) of the Bankruptcy Code. The Plan thereby satisfies section 1123(a)(6) of the Bankruptcy Code.

g. Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. The identity and affiliations of the initial New Board to the extent known and determined have been disclosed prior to the Confirmation Hearing. The selection of the initial directors and officers of the Reorganized Debtors was, is, and will be consistent with the interests of Holders of Claims and Interests and public policy. Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code have been satisfied.

h. Additional Plan Provisions (11 U.S.C. § 1123(b)). The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and, therefore, are consistent with section 1123(b) of the Bankruptcy Code.

(i) Impairment/Unimpairment of Any Class of Claims or Interests (11 U.S.C. § 1123(b)(1)). Pursuant to the Plan, Classes 1, 2, 3, 6 (to the extent reinstated), and 7 (to the extent reinstated) are Unimpaired, and Classes 4, 5, 6 (to the extent cancelled), 7 (to the extent cancelled), 8, and 9 are Impaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

(ii) Assumption, Rejection and Assignment of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)). **Article V** of the Plan provides that on the Effective Date, except as otherwise provided therein, all Executory Contracts or Unexpired Leases will be deemed rejected as of the Effective Date, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (1) previously were assumed or rejected by the Debtors; (2) are identified on the Assumed Executory Contract and Unexpired Lease Schedule, or (3) are the subject of a notice of assumption or motion to assume such Executory Contracts or Unexpired Leases, as applicable, that is pending on the Effective Date, regardless of whether the requested effective

date of such assumption is on or after the Effective Date; *provided, however*, that no notices of assumption or motions to assume Unexpired Leases of non-residential real property shall be pending on the Effective Date, absent counterparty consent. Any assignments of Executory Contracts or Unexpired Leases as of the Effective Date pursuant to the Restructuring Transactions or otherwise shall comply with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.

(iii) Preservation of Causes of Action (11 U.S.C. § 1123(b)(3)). In accordance with section 1123(b)(3) of the Bankruptcy Code, **Article IV.W** of the Plan provides that, the Debtors and the Reorganized Debtors, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, other than Released Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Debtors' or the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

(iv) Compromise and Settlement (11 U.S.C. § 1123(b)(3)). In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that all holders of Claims or Interests may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest. Such compromise and settlement is fair, equitable, and reasonable and in the best interests of the Debtors and their Estates.

(v) Other Appropriate Provisions (11 U.S.C. § 1123(b)(6)). The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (1) distributions to holders of Claims and Interests, (2) resolution of Disputed Claims, (3) allowance of certain Claims, (4) releases by the Debtors of certain parties, (5) releases by certain third parties, (6) exculpation of certain parties, and (7) retention of Court jurisdiction, thereby satisfying the requirements of section 1123(b)(6).

i. Cure of Defaults (11 U.S.C. § 1123(d)). **Article V.C** of the Plan provides that any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in cash on the Effective Date, subject to the limitations described therein.

**M. The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

14. The Debtors have complied with the applicable provisions of the Bankruptcy

Code, as required by section 1129(a)(2) of the Bankruptcy Code. Specifically:

a. the Debtors are eligible debtors under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

b. the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

c. the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the W.PA.LBR in transmitting the Confirmation Materials and related notices and in soliciting and tabulating the votes on the Plan.

## N. Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).

15. Payments made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

## O. Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).

16. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliation of the persons proposed to serve as members of the New Board (to the extent known and determined) have been disclosed prior to the Confirmation Hearing, and the appointment to, or continuance in, such positions of such persons is consistent with the interests of Holders of Claims against and Interests in the Debtors and public policy.

## P. No Rate Changes (11 U.S.C. § 1129(a)(6)).

17. Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction.

## Q. Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).

18. Each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

19. The liquidation analysis attached as **Exhibit C** to the Disclosure Statement (the "Liquidation Analysis") and the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to the Confirmation Hearing or in the Confirmation Declaration: (i) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (ii) utilize reasonable and appropriate methodologies and assumptions; (iii) have not been controverted by other evidence; and (iv) establish that holders of Allowed Claims in every Class will recover as much or more under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Accordingly, the Plan satisfies the "best interest of creditors" test under section 1129(a)(7) of the Bankruptcy Code.

## R. Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).

20. Classes 1, 2, 3, 6 (to the extent reinstated), and 7 (to the extent reinstated)

are Unimpaired by the Plan pursuant to section 1124 of the Bankruptcy Code and, accordingly, holders of Claims or Interests in such Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 4 and 5 are Impaired by the Plan. Classes 4 and 5 at each Debtor have voted to accept the Plan and no Classes have voted to reject the Plan, as established by the Voting Certification. Holders of Claims or Interests in Classes 8 and 9 will not receive or retain any property on account of their Claims or Interests and, accordingly, such Claims and Interests are Impaired and such holders are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**S.  Treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, DIP ABL Claims, DIP New Money Term Loan Claims, DIP Roll–Up Term Loan Claims and United States Trustee Statutory Fees (11 U.S.C. § 1129(a)(9)).**

21. The treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, DIP ABL Claims, DIP New Money Term Loan Claims, DIP Roll–Up Term Loan Claims, and United States Trustee Statutory Fees pursuant to **Article II** and **Article III** of the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(9) of the Bankruptcy Code.

**T.  Acceptance By at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

22. Claims in Classes 4 and 5 are entitled to vote under the Plan. Classes 4 and 5 of each Debtor have voted to accept the Plan, as established by the Voting Certifi-

cation. Accordingly, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

**U.  Feasibility (11 U.S.C. § 1129(a)(11)).**

23. The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing, including the Confirmation Declaration: (i) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, and/or proffered; (ii) utilizes reasonable and appropriate methodologies and assumptions; (iii) has not been controverted by other evidence; (iv) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or the Reorganized Debtors, except as provided for in the Plan; and (v) establishes that the Debtors or the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

**V.  Payment of Fees (11 U.S.C. § 1129(a)(12)).**

24. As set forth in **Article XII.C** of the Plan, all fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by each of the Reorganized Debtors (or the Disbursing Agent on behalf of each of the Reorganized Debtors) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**W.  Retiree Benefits (11 U.S.C. § 1129(a)(13)).**

25. Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for "retiree benefits" (as defined in section 1114 of the Bankruptcy Code) at levels

established pursuant to section 1114 of the Bankruptcy Code. On and after the Effective Date, all "retiree benefits" (as defined in section 1114 of the Bankruptcy Code) shall continue to be paid in accordance with applicable law. Accordingly, the requirements of section 1129(a)(13) of the Bankruptcy Code have been satisfied.

### X.  No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).

26. The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

### Y.  None of the Debtors is an Individual (11 U.S.C. § 1129(a)(15)).

27. None of the Debtors is an individual. Accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

### Z.  No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).

28. The Debtors are moneyed, business, or commercial entities. Accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

### AA.  Confirmation of Plan Over Non-Acceptance of Impaired Classes (11 U.S.C. § 1129(b)).

29. The Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding that the requirements of section 1129(a)(8) have not been met, because the Debtors have demonstrated by a preponderance of the evidence that the Plan (i) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (ii) does not "discriminate unfairly" and is "fair and equitable" with respect to the Rejecting Classes (as defined below).

30. The Plan does not "discriminate unfairly" against any holders of Claims and Interests in Classes that are deemed to reject the Plan (the "Rejecting Classes"). The treatment of such holders is proper because all similarly situated holders of Claims and Interests will receive substantially similar treatment, and the Debtors have a valid rationale, including for the rationales articulated in the Confirmation Brief, for the Plan's classification scheme and the disparate treatment, if any, provided for different Classes.

31. The Plan is also "fair and equitable" with respect to each Rejecting Class. No holder of Claims or Interests junior to any Rejecting Class is receiving a distribution under the Plan.

32. The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

### BB.  Only One Plan (11 U.S.C. § 1129(c)).

33. The Plan is the only plan filed in the Chapter 11 Cases, and, accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

### CC.  Principal Purpose of the Plan (11 U.S.C. § 1129(d)).

34. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

### DD.  Not Small Business Cases (11 U.S.C. § 1129(e)).

35. None of the Chapter 11 Cases are small business cases, as that term is de-

fined in the Bankruptcy Code, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

## EE. Plan Implementation.

36. The terms of the Plan, including, without limitation, the Plan Supplement and all exhibits and schedules thereto, and all other documents filed in connection with the Plan, or executed or to be executed in connection with the transactions contemplated by the Plan (including without limitation the Restructuring Transactions) and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications (collectively, the "Plan Documents") are incorporated by reference, are approved in all respects, and constitute an integral part of this Confirmation Order. The Plan Documents are essential elements of the Plan and entry into and consummation of the transactions contemplated by each Plan Document is in the best interests of the Debtors, the estates, and the holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining which Plan Documents to enter into and have provided sufficient and adequate notice of such documents.

## FF. Binding and Enforceable.

37. The Plan and the Plan Documents have been negotiated in good faith and at arm's length, are fair and reasonable, and, subject to the occurrence of the Effective Date, shall bind any holder of a Claim or Interest and such holder's respective successors and assigns, whether or not (i) the Claim or Interest is Impaired under the Plan, (ii) such holder has accepted the Plan, and (iii) such holder is entitled to a distribution under the Plan. The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

## GG. Executory Contracts and Unexpired Leases.

38. The Debtors have exercised sound business judgment in determining whether to reject, assume, or assume and assign each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, **Article V** of the Plan, and as set forth in the Plan Supplement (including without limitation pursuant to the Restructuring Transactions). Except as set forth herein and/or in separate orders entered by this Court relating to assumption of Executory Contracts or Unexpired Leases, the Debtors have cured or provided adequate assurances that the Debtors will cure defaults (if any) under or relating to each Executory Contract or Unexpired Lease assumed under the Plan and, for each Executory Contract or Unexpired Lease being assigned under the Plan (if any) (including pursuant to the Restructuring Transactions), such assignee has provided adequate assurance of future performance as required under section 365(f)(2)(B).

39. Nothing in the Plan or the Confirmation Order shall prevent a party to an Executory Contract or Unexpired Lease rejected pursuant to the Plan from filing a Proof of Claim based on such rejection within thirty (30) days of the later of (i) the date of entry of this Confirmation Order, (ii) the effective date of such rejection, or (iii) the Effective Date. Nothing in the Plan or this Confirmation Order shall prevent a party to an Executory Contract or

Unexpired Lease assumed pursuant to the Plan, or otherwise, from continuing to prosecute an objection to the cure cost related to such assumed Executory Contract if such objection was or is timely filed, but not resolved before the Effective Date.

## HH. Discharge, Compromise, Settlement, Release, Exculpation, and Injunction Provisions.

40. This Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the discharge, compromise, settlement, release, exculpation, and injunction provisions set forth in **Article VIII** of the Plan. Sections 105(a) and 1123(b) of the Bankruptcy Code permit issuance of the injunctions and approval of the releases, exculpations, and injunctions set forth in **Article VIII** of the Plan. Based upon the record of the Chapter 11 Cases and the evidence proffered or adduced at the Confirmation Hearing, this Court finds that the discharge, compromise, settlement, releases, exculpations, and injunctions set forth in **Article VIII** of the Plan are consistent with the Bankruptcy Code and applicable law. Further, the discharge, compromises, settlements, release, exculpation, and injunction provisions contained in **Article VIII** of the Plan are integral components of the Plan. The discharge, compromise, settlement, release, exculpation, and injunction provisions set forth in **Article VIII** of the Plan are hereby approved and authorized in their entirety.

## II. Debtor Release.

41. The releases of claims and Causes of Action by the Debtors described in **Article VIII.C** of the Plan (the "Debtor Release") are approved for the reasons set forth in the MemoraQGXP VN 0QJO Opinion of the same date. The Debtors' or the Reorganized Debtors' pursuit of any such claims against the Released Parties is not in the best interest of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such Claims. The Debtor Release is fair and equitable and complies with the absolute priority rule.

42. The Debtor Release is furthermore an integral part of the Plan and is in the best interests of the Debtors' Estates as a component of the comprehensive settlement implemented under the Plan. The low probability of success in litigation with respect to the released Causes of Action supports the Debtor Release. The Plan, including the Debtor Releases, was negotiated before and after the Petition Date by sophisticated parties represented by able counsel and financial advisors. The Debtor Release is therefore the result of an arm's-length negotiation process.

43. The Debtor Release appropriately offers protection to parties that participated in the Debtors' restructuring process. Specifically, the Released Parties under the Plan made significant concessions and contributions to the Debtors' Chapter 11 Cases, including, as applicable, actively supporting the Plan and these Chapter 11 Cases, and waiving substantial rights and Claims against the Debtors under the Plan. The Debtor Release for the Debtors' directors and officers is appropriate because the Debtors' directors and officers share an identity of interest with the Debtors, supported the Plan and these Chapter 11 Cases, and actively participated in meetings, negotiations, and implementation during these Chapter 11 Cases, and have provided other valuable consideration to the Debtors to facilitate the Debtors' reorganization.

44. The scope of the Debtor Release is appropriately tailored under the facts and

circumstances of these Chapter 11 Cases. In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is appropriate.

## JJ. Third Party Release.

45. The release by the Releasing Parties (the "Third Party Release"), set forth in **Article VIII.D** of the Plan, is an essential provision of the Plan. The Third Party Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good-faith settlement and compromise of the claims and Causes of Action released by the Third Party Release; (iii) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders, and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in these Chapter 11 Cases; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; (vi) a bar to any of the Releasing Parties asserting any claim or Cause of Action released by the Third Party Release against any of the Released Parties; and (vii) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

46. The Third Party Release is an integral part of the Plan. Like the Debtor Release, the Third Party Release facilitated participation in both the Debtors' Plan and the chapter 11 process generally. The Third Party Release is instrumental to the Plan and was critical in incentivizing the parties to support the Plan and preventing potentially significant and time-consuming litigation regarding the parties' respective rights and interests. The Third Party Release was instrumental in developing a Plan that maximized value for all of the Debtors' stakeholders. As such, the Third Party Release appropriately offers certain protections to parties that constructively participated in the Debtors' restructuring process. Among other things, (a) the DIP Term Loan Parties [4] agreed to (i) support the Plan, (ii) commit to backstop the $150 million DIP Term Loan Facility that was required to support the Debtors' estates during these Chapter 11 Cases, including by providing $50 million in DIP New Money Term Loans, (iii) fund the Exit Term Loan Facility by agreeing to convert the DIP New Money Term Loan Claims into Exit Term Loans, (iv) a Plan that provides a recovery of 2–4% to Holders of General Unsecured Claims, even though such claims are out-of-the-money, and (iv) waive the Prepetition Term Loan Deficiency Claim, thereby increasing the recovery available to General Unsecured Creditors; (b) the DIP ABL Lenders, the DIP ABL Agent, the Prepetition ABL Lenders and the Prepetition ABL Agent agreed to (i) support the Plan, (ii) provide a $125 million postpetition DIP ABL Credit Facility, and (iii) provide a $125 million Exit ABL Credit Facility; and (c) the Sponsor entities, in their roles as lenders and equity holders, agreed to (i) support the Plan, including by promptly facilitating and participating in prepetition Plan discussions that culminated in the Restructuring Support Agreement and the Plan, notwithstanding that their equity position would likely be eliminated thereunder; and (ii) participate in the financing of the DIP Term Loan Credit Facility. Furthermore, the Third Party Release is consensual or is otherwise appropriate under controlling law.

---

4. "DIP Term Loan Parties" means, collectively, the DIP Term Loan Agent, the DIP Term Loan Lenders, the Prepetition Term Loan Agent and the Term Loan Lender Group.

47. The scope of the Third Party Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases, and parties in interest received due and adequate notice of the Third Party Release. Among other things, the Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third Party Release, and no other disclosure is necessary. The Debtors provided sufficient notice of the Third Party Release, and no further or other notice is necessary. The Third Party Release is specific in language, integral to the Plan, and given for adequate consideration. In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Third Party Release to the Plan, the Third Party Release is appropriate.

## KK. Exculpation.

48. The exculpation provisions set forth in **Article VIII.E** of the Plan were proposed in good faith and are essential to the Plan. The record in the Chapter 11 Cases fully supports the exculpation provisions, and the exculpation provisions set forth in **Article VIII.E** of the Plan are appropriately tailored to protect the Exculpated Parties from inappropriate litigation and to exclude actions determined by Final Order to have constituted actual fraud or gross negligence.

## LL. Injunction.

49. The injunction provisions set forth in **Article VIII.F** of the Plan are essential to the Plan; are necessary to preserve and enforce the releases set forth in **Articles VIII.B**, **VIII.C**, and **VIII.D** of the Plan, the exculpation provisions in **Article VIII.E** of the Plan, and the compromises and settlements implemented under the Plan; and are narrowly tailored to achieve that purpose.

50. The injunction provisions set forth in **Article VIII.F** of the Plan: (i) are within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (ii) are an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) are an integral element of the transactions incorporated into the Plan; (iv) confer material benefits on, and are in the best interests of, the Debtors, the Estates, and their creditors; (v) are important to the overall objectives of the Plan to finally resolve all Claims or Causes of Action among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (vi) are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, and other applicable law. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the injunction provisions set forth in **Article VIII.F** of the Plan.

## MM. Retention of Jurisdiction.

51. Except as otherwise provided in any of the Plan Documents, this Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including the matters set forth in **Article XI** of the Plan.

## NN. Good Faith.

52. The Debtors have proposed the Plan (including the Plan Documents and all other documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances

surrounding the filing of the Chapter 11 Cases and the formulation of the Plan. The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearing. The Plan was proposed with the legitimate and honest purpose of implementing the Plan through the Restructuring Transactions and other transactions contemplated by the Plan and Plan Documents, thereby maximizing the value of the Debtors' Estates and to effectuate a successful restructuring of the Debtors. The Plan was the product of extensive negotiations conducted at arm's length among the Debtors and certain of their key stakeholders. Further, the Plan's classification, indemnification, settlement, discharge, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors to consummate a value-maximizing transaction. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

53. The Debtors have proposed the Plan with the legitimate and honest purpose of maximizing the value of each of the Debtors' Estates for the benefit of their stakeholders. The Plan gives effect to many of the Debtors' restructuring initiatives, including implementing a value maximizing restructuring transaction (including without limitation pursuant to the Restructuring Transactions). Accordingly, the Debtors (and all of their respective officers, managers, directors, agents, financial advisers, attorneys, employees, partners, Affiliates, and representatives) have been active, are acting, and will continue to act in good faith if they proceed to: (i) consummate the Plan and the Restructuring Transactions and the agreements, settlements, transactions, and transfers contemplated thereby; and (ii) take the actions authorized and directed or contemplated by this Confirmation Order. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the aforementioned parties have acted in good faith within the meaning of sections 1125(e) and 1126(e) the Bankruptcy Code.

## PP. The Exit Credit Facilities.

54. The Exit Credit Facilities are an essential element of the Plan, and entry into the Exit Credit Facilities, the Exit Credit Facilities Documents, the Exit ABL Commitment Letter and that certain Amended and Restated Fee Letter dated August 25, 2017, among the Debtors' and Bank of America (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "Exit ABL Fee Letter"), is in the best interests of the Debtors, the Estates and all holders of Claims and Interests, and is necessary for confirmation and consummation of the Plan. The Debtors have exercised reasonable business judgment in determining to enter into the Exit Credit Facilities, the Exit Credit Facilities Documents, the Exit ABL Commitment Letter and the Exit ABL Fee Letter, and have provided sufficient and adequate notice of the material terms of the Exit Credit Facilities. The terms and conditions of the Exit Credit Facilities, the Exit ABL Commitment Letter and the Exit ABL Fee Letter are fair and reasonable, and the Exit Credit Facilities, the Exit ABL Commitment Letter and the Exit ABL Fee Letter have been negotiated in good faith and at arms's length. The Debtors and the Reorganized Debtors are authorized, without further approval of the Court, to execute and deliver and incur and perform their obligations under the Exit ABL

Commitment Letter and the Exit ABL Fee Letter. The Debtors and the Reorganized Debtors are authorized, without further approval of the Court, to execute and deliver the Exit Credit Facilities Documents, including, without limitation, all agreements, documents, instruments and certificates relating to the Exit Credit Facilities and incur and perform their obligations under the Exit Credit Facilities. BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

## A. Confirmation of the Plan.

55. The Plan and the other Plan Documents shall be, and hereby are, confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan Documents (including without limitation the Restructuring Transactions) are incorporated by reference into, and are an integral part of, the Plan and this Confirmation Order and are authorized and approved, and the Debtors are authorized to implement their provisions and consummate the Plan without any further authorization except as expressly required by the Plan or this Confirmation Order.

## B. Objections.

56. All objections, responses, reservations, statements, and comments in opposition to the Plan, other than those resolved, or withdrawn with prejudice prior to, or on the record at, the Confirmation Hearing are overruled on the merits in all respects. All withdrawn objections, if any, are deemed withdrawn with prejudice.

## C. Omission of Reference to Particular Plan Provisions.

57. The failure to specifically describe or include any particular provision of the Plan or the Plan Documents in this Confirmation Order shall not diminish or impair the effectiveness of such provision, and such provision shall have the same validity, binding effects and enforceability as every other provision of the Plan and the Plan Documents.

## D. Deemed Acceptance of the Plan as Modified.

58. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims that voted to accept the Plan or that are conclusively presumed to have accepted the Plan are deemed to accept the Plan, subject to modifications (subject to the Restructuring Support Agreement), if any. No holder of a Claim shall be permitted to change its vote as a consequence of the Plan modifications. All modifications to the Plan made after the Solicitation Date (including any modifications contained in this Confirmation Order) are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

## E. Plan Implementation.

59. General Authorization. The transactions described in the Plan (including without limitation pursuant to the Restructuring Transactions), the other Plan Documents, and this Confirmation Order are hereby approved. On or before the Effective Date, and after the Effective Date, as necessary, and without any further order of this Court or other authority, the Debtors, or the Reorganized Debtors, as applicable, and their respective directors, managers, officers, members, agents, attorneys, financial advisors, and investment bankers are authorized and empowered pursuant to section 1142(b) of the Bankruptcy Code and other applicable laws (including without limitation section 303 of the General Corporate Law of the State of Delaware and the comparable provisions of the Delaware Limited Liability Company Act) to

and shall (i) grant, issue, execute, deliver, file, or record any agreement, document, or security, and the documents contained in the Plan or the Plan Documents (including without limitation pursuant to the Restructuring Transactions) (as modified, amended, and supplemented pursuant to the provisions of the Plan governing such modifications, amendments, and supplements), in substantially the form included therein, or any other documents related thereto and (ii) take any action necessary or appropriate to implement, effectuate, and consummate the Plan, the Plan Documents, the Restructuring Transactions or this Confirmation Order, in accordance with their terms. All such actions taken or caused to be taken shall be deemed to have been authorized and approved by this Court without further approval, act, or action under any applicable law, order, rule, or regulation, including, among other things, (i) all transfers of assets that are to occur pursuant to the Plan, the Plan Documents, the Restructuring Transactions, the New Organizational Documents, the Exit Credit Facilities Documents, the Exit ABL Commitment Letter, or this Confirmation Order; (ii) the incurrence of all obligations contemplated by the Plan, the Plan Documents, the New Organizational Documents, the Exit Credit Facilities Documents, the Exit ABL Commitment Letter, or this Confirmation Order and the making of all distributions under the Plan, the Plan Documents, the New Organizational Documents, the Exit Credit Facilities Documents, the Exit ABL Commitment Letter, or this Confirmation Order; and (iii) entering into any and all transactions, contracts, leases, instruments, releases, and other documents and arrangements permitted by applicable law, order, rule, or regulation pursuant to the Plan, the Plan Documents, the Restructuring Transactions, the New Organizational

Documents, the Exit Credit Facilities Documents, the Exit ABL Commitment Letter, or this Confirmation Order. The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Debtors, the Reorganized Debtors, or any officer, director, or manager thereof to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan, the Plan Documents or this Confirmation Order pursuant to section 1142(b) of the Bankruptcy Code. Pursuant to section 1142 of the Bankruptcy Code, to the extent that, under applicable nonbankruptcy law (including without limitation section 303 of the General Corporate Law of the State of Delaware and the comparable provisions of the Delaware Limited Liability Company Act), any of the foregoing actions that would otherwise require approval of the equity holders, directors, or managers (or any equivalent body) of the Debtors or the Reorganized Debtors, such approval shall be deemed to have occurred and shall be in effect from and after the Effective Date without any further action by the equity holders, directors, or managers (or any equivalent body) of the Debtors or the Reorganized Debtors. On the Effective Date, or as soon thereafter as is practicable, the Debtors or the Reorganized Debtors, as applicable, shall, if required, file any documents required to be filed in such jurisdictions so as to effectuate the provisions of the Plan. Any or all documents contemplated herein shall be accepted by each of the respective filing offices and recorded, if required, in accordance with applicable law. All counterparties to any documents described in this paragraph are hereby directed to execute such documents as may be required or provided by such docu-

ments, without any further order of this Court.

60. No Action. Pursuant to the appropriate provisions of the General Corporation Law of the State of Delaware (including section 303 thereof and the comparable provisions of the Delaware Limited Liability Company Act), section 1142(b) of the Bankruptcy Code, or other applicable law, this Confirmation Order shall constitute authorization for the Debtors or the Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Plan Documents (including without limitation the New Organizational Documents), the Exit Credit Facilities Documents, the Exit ABL Commitment Letter, the Exit ABL Fee Letter, this Confirmation Order, and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, and the respective directors, managers, stockholders, managers, or members of the Debtors or the Reorganized Debtors shall not be required to take any actions in connection with the implementation of the Plan, the Plan Documents, the Exit Credit Facilities Documents, the Restructuring Transactions, or this Confirmation Order. The Plan Documents are hereby approved, adopted, and effective upon the Effective Date.

## F.  Binding Effect.

61. On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the Plan, the Plan Documents, and this Confirmation Order shall bind any holder of a Claim or Interest and such holder's respective successors and assigns, whether or not: (i) the Claim or Interest is Impaired under the Plan; (ii) such holder has accepted the Plan; (iii) such holder has failed to vote to accept or reject the Plan or voted to reject the Plan; (iv) such holder is entitled to a distribution under the Plan; (v) such holder will receive or retain any property or interests in property under the Plan; and (vi) such holder has filed a Proof of Claim in the Chapter 11 Cases. The Plan, the Plan Documents, and this Confirmation Order constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan, the Plan Documents, and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law. The Plan, the Plan Documents and this Confirmation Order, and all prior orders of the Court in the Chapter 11 Cases shall be binding against and binding upon and shall not be subject to rejection or avoidance by any Chapter 7 or Chapter 11 trustee appointed in any of the Chapter 11 Cases, or any Successor Cases (as defined in the Final DIP Order).

## G.  Plan Classification Controlling.

62. The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the holders of Claims or Interests in connection with voting on the Plan: (i) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (ii) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes; (iii) may not be relied upon by any holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (iv) shall not be binding on the

Debtors except for voting purposes. All rights of the Debtors and the Reorganized Debtors to challenge, object to, or seek to reclassify Claims are expressly reserved.

### H.  Operation as of the Effective Date.

63. Upon the occurrence of the Effective Date, the terms of the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims against or Interests in the Debtors (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

### I.  Vesting of Assets.

64. Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Debtors' estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### J.  Restructuring Transactions.

65. The Debtors and the Reorganized Debtors, with the consent of the Backstop DIP Term Lenders, are authorized to implement and consummate the Restructuring Transactions pursuant to the Plan, the Plan Documents (as may be amended), the Exit ABL Commitment Letter, the Exit ABL Fee Letter, and this Confirmation Order and are authorized to execute and deliver all necessary documents or agreements required to perform their obligations thereunder. The Restructuring Transactions (including any assignments of Executory Contracts or Unexpired Leases effectuated thereunder that are effective on or before the Effective Date) pursuant to the Plan are approved and authorized in all respects. The Debtors and the Reorganized Debtors, with the consent of the Backstop DIP Term Lenders, are authorized and directed to take all actions, necessary, appropriate, or desirable to enter into, implement, and consummate the contracts, instruments, releases, agreements, or other documents created or executed in connection with the Plan. In accordance with section 1142 of the Bankruptcy Code and applicable nonbankruptcy law, such actions may be taken without further action by stockholders, managers, or directors.

### K.  Exit Credit Facilities.

66. The Debtors and the Reorganized Debtors are authorized to enter into the Exit Credit Facilities, the terms of which will be set forth in the Exit Credit Facilities Documents, as applicable, and the Exit ABL Commitment Letter and the Exit ABL Fee Letter. This Confirmation Order shall be deemed approval of the Exit ABL Commitment Letter, the Exit ABL Fee Letter, the Exit Credit Facilities and the Exit Credit Facilities Documents (including, without limitation, all agreements, documents, instruments, and certificates relating to the Exit Credit Facilities), as

applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Debtors and the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and authorization of the Debtors and the Reorganized Debtors to enter into and execute, without further approval of the Court, the Exit ABL Commitment Letter, the Exit ABL Fee Letter, the Exit Credit Facilities Documents and such other agreements, securities, instruments, and documents as may be required to effectuate the treatment afforded to the lenders by the Exit Credit Facilities, including execution of any payoff letter with respect to the DIP Facilities. The Reorganized Debtors are authorized to: (i) immediately pay as and when required all fees, expenses and indemnities required to be paid under the Exit Credit Facilities, (ii) immediately pay each Allowed DIP ABL Claim indefeasibly in full in cash from the proceeds of the Exit Credit Facilities; and (iii) immediately pay as and when required all amounts owing under any payoff letter with respect to the DIP Facilities.

67. The agreements, documents, securities, and instruments entered into in connection with the Exit Credit Facilities constitute legal, valid, and binding obligations of the Debtors and the Reorganized Debtors and shall be enforceable in accordance with their terms. Subject to (i) the indefeasible payment in full in cash of each Allowed DIP ABL Claim and (ii) receipt by the DIP ABL Agent (as defined in the Final DIP Order) of a payoff letter in form and substance satisfactory to the DIP ABL Agent, on the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Credit Facilities and the Exit Credit Facilities Documents (i) shall be deemed to be granted, (ii) shall be valid, legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Credit Facilities Documents, (iii) shall be deemed automatically perfected on the Effective Date, and (iv) shall be subject only to such Liens and security interests, if any, as may be expressly permitted under the Exit Credit Facilities Documents, The guarantees, mortgages, pledges, Liens, and other security interests granted pursuant to or in connection with the Exit Credit Facilities are granted in good faith, for a legitimate business purpose, for reasonably equivalent value, and as an inducement to the lenders to extend credit thereunder and shall be, and hereby are, deemed reasonable and not to constitute a fraudulent conveyance or fraudulent transfer under the Bankruptcy Code or any applicable non-bankruptcy law, shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not otherwise be subject to avoidance. The priorities of the liens and security interests granted pursuant to or in connection with the Exit Credit Facilities shall be as set forth in the intercreditor agreement and other definitive documentation executed in connection with the Exit Credit Facilities. The Reorganized Debtors and the persons and entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter coop-

erate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

**L.  New Organizational Documents**

68. The terms of the New Organizational Documents, each attached to the Plan Supplement, are approved in all respects. The obligations of the applicable Reorganized Debtors related thereto, will, upon execution, constitute legal, valid, binding, and authorized obligations of each of the Debtors or Reorganized Debtors, as applicable, enforceable in accordance with their terms and not in contravention of any state or federal law. On the Effective Date, without any further action by the Court or the directors, officers, or equity holders of any of the Reorganized Debtors, each Reorganized Debtor, as applicable, will be and is authorized to enter into the New Organizational Documents to which such Reorganized Debtor is contemplated to be a party on the Effective Date. In addition, on the Effective Date, without any further action by the Court or the directors, officers or equity holders of any of the Reorganized Debtors, each applicable Reorganized Debtor will be and is authorized to: (a) execute, deliver, file, and record any other contracts, assignments, certificates, instruments, agreements, guaranties, or other documents executed or delivered in connection with the New Organizational Documents; (b) perform all of its obligations under the New Organizational Documents; and (c) take all such other actions as any of the responsible officers of such Reorganized Debtor may determine are necessary, appropriate or desirable in connection with the consummation of the transactions contemplated by the New Organizational Documents or pursuant to the Restructuring Transactions. The Shareholder Agreement (substantially in the form attached as Exhibit A-4 to the Plan Supplement) shall be effective as of the Effective Date and, as of such date, shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Equity from and after the Effective Date shall be bound thereby.

69. After the Effective Date, the Reorganized Debtors may, in accordance with the provisions of the Exit Credit Facilities Documents, amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective state of incorporation and their respective New Organizational Documents. Notwithstanding anything to the contrary in this Confirmation Order or Article XI of the Plan, after the Effective Date, any disputes arising under the Exit Credit Facilities Documents and the New Organizational Documents will be governed by the jurisdictional provisions therein.

**M.  Distributions.**

70. All distributions pursuant to the Plan shall be made in accordance with **Article VI** of the Plan, and such methods of distribution are approved. The Reorganized Debtors shall have no duty or obligation to make distributions to any holder of an Allowed Claim unless and until such holder executes and delivers, in a form acceptable to the Reorganized Debtors, all Plan Documents applicable to such distributions.

**N.  Claims Register**

71. On and after the Effective Date, any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Reorganized Debtors to the maximum extent provided by applicable law without a

Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### O. Retained Assets.

72. To the extent that the retention by the Debtors of assets held immediately prior to emergence in accordance with the Plan is deemed, in any instance, to constitute a "transfer" of property, such transfer of property to the Debtors (i) is or shall be a legal, valid, and effective transfer of property; (ii) vests or shall vest the Debtors with good title to such property, free and clear of all liens, charges, Claims, encumbrances, or interests, except as expressly provided in the Plan or this Confirmation Order; (iii) does not and shall not constitute an avoidable transfer under the Bankruptcy Code or under applicable non-bankruptcy law; and (iv) does not and shall not subject the Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including by laws affecting successor or transferee liability.

### P. Treatment of Executory Contracts and Unexpired Leases.

73. The treatment of Executory Contracts and Unexpired Leases as set forth in **Article V.A** of the Plan is hereby authorized. On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts or Unexpired Leases will be deemed rejected as of the Effective Date, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (i) previously were assumed or rejected by the Debtors; (ii) are identified on the Assumed Executory Contract and Unexpired Lease Schedule; or (iii) are the subject of a notice of assumption or motion to assume such Executory Contracts or Unexpired Leases, as applicable, that is pending on the Effective Date, regardless of whether the requested effective date of such assumption is on or after the Effective Date; *provided, however,* that no notices of assumption or motions to assume Unexpired Leases of non-residential real property shall be pending on the Effective Date absent counterparty consent. Entry of this Confirmation Order by this Court shall constitute approval of such rejections and the assumption of the Executory Contracts or Unexpired Leases listed on the Assumed Executory Contract and Unexpired Lease Schedule pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions or notices to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by this Court on or after the Effective Date by a Final Order; *provided, however,* that no notices of assumption or motions to assume Unexpired Leases of non-residential real property shall be pending on the Effective Date absent counterparty consent. Each Executory Contract and Unexpired Lease assumed pursuant to **Article V.A.** of the Plan, or by any order of this Court, which has not been assigned to a third party prior to the Effective Date, shall revest in and be fully enforceable by the Debtors in accordance with such Executory Contract and/or Unexpired Lease's terms, except as such terms are modified by agreement of the counterparty to the Executory Contract or Unexpired Lease or any order of this Court authorizing and providing for its assumption under applicable federal law. To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan (including without limitation pursuant to the Restructuring Transactions) restricts or prevents, or purports to

restrict or prevent, or is breached or deemed breached by, the assumption or the assumption and assignment of such Executory Contract or Unexpired Lease (including, without limitation, any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contract and Unexpired Lease Schedule at any time through and including forty-five (45) days after the Effective Date, *provided, however*, that the Debtors shall not amend, modify, or supplement the Assumed Executory Contract and Unexpired Lease Schedule to add or remove any unexpired leases of non-residential real property from such schedule absent counterparty consent.

74. The Disclosure Statement, including the exhibits thereto, contains information providing counterparties to assumed and assumed and assigned to a Reorganized Debtor (including without limitation pursuant to the Restructuring Transactions) contracts and unexpired leases with adequate assurance of future performance in accordance with section 365 of the Bankruptcy Code. Notwithstanding anything in the Plan to the contrary, to the extent the Debtors propose the post-Effective Date assignment of leases as part of the Restructuring Transactions, such transactions are not subject to Bankruptcy Code section 365 and any proposed assignment of leases would be governed by applicable state law and the terms of the respective leases (including any notice and consent requirements).

75. Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in cash on the Effective Date, subject to the limitations described in **Article V** of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding: (i) the amount of any payments to cure such a default; (ii) the ability of the Debtors or any assignee to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to assumption, the cure amount required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption; *provided that* the Reorganized Debtors may settle any dispute regarding the amount of any such cure amount without any further notice to any other party or any action, order, or approval of this Court; *provided, further, that*, notwithstanding anything to the contrary in the Plan, prior to the entry of a Final Order resolving any dispute and approving the assumption or assumption and assignment of such Executory Contract or Unexpired Lease, the Debtors or the Reorganized Debtors, as applicable, reserve the right to reject any Executory Contract or Unexpired Lease Schedule in accordance with **Article V.A** of the Plan or otherwise. Except as otherwise agreed upon by an applicable counterparty, the Debtors shall make all cure payments substantially contemporaneously with assumption of the Executory Contracts and Unexpired Leases on the Effective Date.

76. Pursuant to **Article V.B.** of the Plan, unless otherwise provided by a Final Order of this Court approving rejection of Executory Contracts or Unexpired Leases, all Proofs of Claims with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Notice and Claims Agent on or before the later of the date that is thirty (30) days after (i) notice of the Effective Date; or (ii) the date on which the Reorganized Debtors remove an Executory Contract or Unexpired Lease from the Assumed Executory Contract and Unexpired Lease Schedule on or after the Effective Date pursuant to **Article V.A** of the Plan, as applicable (the "Rejection Date"); *provided, however*, that the Rejection Date with respect to any Unexpired Lease of non-residential real property shall not occur until the date the Debtors relinquish control of the premises by notifying the affected landlord in writing of the Debtors' surrender of the premises and (x) turning over keys, key codes, and security codes, if any, to the affected landlord, or (y) notifying the affected landlord in writing that the keys, key codes, and security codes, if any, are not available, but the landlord may rekey the leased premises.

### Q. Directors' and Officers' Liability Insurance.

77. As set forth in the Plan, the D&O Liability Insurance Policies, in effect on the Effective Date, shall be continued, subject to such D&O Liability Insurance Policies being reasonably satisfactory to the Backstop DIP Term Lenders. To the extent that the D&O Liability Insurance Policies are deemed to be Executory Contracts, then, notwithstanding anything in the Plan to the contrary, the Debtors shall be deemed to have assumed all of the Debtors' unexpired D&O Liability Insurance Policies pursuant to sections 365(a) and 1123 of the Bankruptcy Code effective as of the Effective Date. Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation shall not discharge, impair, or otherwise modify any indemnity or other obligations of the insurers under any of the D&O Liability Insurance Policies.

78. After the Effective Date, none of the Debtors or the Reorganized Debtors shall terminate or otherwise modify the terms of any D&O Liability Insurance Policies (including any "tail policy") in effect on the Petition Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

### R. Exemption from Transfer Taxes.

79. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

### S. Governmental Approvals Not Required.

80. This Confirmation Order shall constitute all approvals and consents required, if

any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and the Plan Documents.

## T. Filing and Recording.

81. This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities that may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

## U. Tax Withholding.

82. In accordance with the provisions of the Plan and subject to **Article VI.G** of the Plan, to the extent applicable, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.

## V. Discharge of Claims and Termination of Interests; Compromise and Settlement of Claims, Interests, and Controversies.

83. Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, this Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to the Plan, including the Plan Documents, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each

case whether or not: (i) a Proof of Claim based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests, subject to the Effective Date occurring.

84. Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code and in consideration for the classification, distributions, releases, and other benefits provided pursuant to the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Causes of Action, Interests, controversies, or issues relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.

## W. The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.

85. The releases, injunctions, exculpations, and related provisions set forth in **Article VIII** of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party.

86. Pursuant to Bankruptcy Rule 3020(c)(1), the following provisions of the Plan will be immediately effective on the Effective Date:

**Article VIII.F: Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan (including the New Equity, and documents and instruments related thereto), or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Liens that have been discharged pursuant to Article VIII.A, released pursuant to Article VIII.B, Article VIII.C, or Article VIII.D, or are subject to exculpation pursuant to Article VIII.E are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has time-**

ly asserted such setoff right prior to the Effective Date in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

## X. Setoff Rights of Counterparties to Unexpired Leases of Non–Residential Real Property.

87. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, counterparties to rejected Unexpired Leases of non-residential real property shall be entitled to assert rights to setoff, subrogation, or recoupment in connection with damages arising from the rejection of such Unexpired Leases of non-residential real property, *provided* that following all such setoffs, recoupments, or subrogations, such counterparty shall return to the Debtors or Reorganized Debtors any excess security deposits or other similar deposits held in connection with such rejected Unexpired Leases of non-residential real property.

## Y. Post–Confirmation Notices, Professional Compensation, and Bar Dates.

88. In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven days after the Effective Date, the Reorganized Debtors must cause notice of Confirmation and occurrence of the Effective Date, substantially in the form attached to this Confirmation Order as Ex-hibit 2 (the "Notice of Confirmation") to be served by United States mail, first-class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice. Notwithstanding the above, no notice of Confirmation or occurrence of the Effective Date or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. To supplement the notice procedures described in the preceding sentence, no later than fourteen days after the Effective Date, the Reorganized Debtors must cause the Notice of Confirmation, modified for publication in the Debtors' discretion, to be published on one occasion in each of the *USA Today* (National Edition) and the *Pittsburgh–Post Gazette*. As soon as practicable after entry of this Confirmation Order, the Debtors shall make copies of this Confirmation Order available on their reorganization website at http://www.kccllc.net/rue 21. Mailing and publication of the Notice of Confirmation in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c). No further notice is necessary.

89. The Notice of Confirmation will have the effect of an order of this Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

90. Professionals or other Entities asserting a Professional Fee Claim for services rendered before the Confirmation Date must File an application for final allowance of such Professional Fee Claim no later than 30 days after the Effective Date. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount this Court allows, including from the Professional Fee Escrow Account, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date and otherwise in accordance with the Plan.

91. Except as otherwise provided in the Plan, requests for payment of Administrative Claims, other than Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code which were required to be Filed by the Bar Date, must be Filed no later than the Administrative Claim Bar Date. Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Reorganized Debtors or any action by this Court. Notwithstanding any provision of the Plan or this Confirmation Order to the contrary no Holder of an Administrative Claim for a cure amount shall be required to file a request for the payment of an expense described in 11 U.S.C. § 503(b)(1)(A) so long as such Holder (a) filed an objection to the Debtors' proposed cure amount pursuant to the Disclosure Statement Order or (b) agreed with the cure amount listed by the Debtors in the Schedule of Assumed Executory Contracts and Unexpired Leases (as amended, supplemented, or modified from time to time).

## Z. Post–Effective Date Notices.

92. Except as otherwise may be provided in the Plan or in this Confirmation Order, the only parties entitled to notice of any pleadings Filed in the Chapter 11 Cases of the Debtors after the Effective Date shall be: (a) the Reorganized Debtors and their counsel, (b) the United States Trustee, (c) counsel to the Backstop DIP Term Lenders, the DIP Term Loan Agent, the Prepetition Term Loan Agent and the Term Loan Lender Group, (d) counsel to the DIP ABL Agent and the Prepetition ABL Agent, and (e) any party known to be directly affected by the relief sought in a given pleading.

## AA. Preservation of Rights of Action.

93. In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including pursuant to the Debtor Release and the Third–Party Release and including Causes of Action against Excluded Parties), the Debtors and the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Debtors' and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

## BB. Release of Liens.

94. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document

created pursuant to the Plan, including the Exit Credit Facilities Documents, or any other document executed in connection therewith, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for any Secured Claims that the Debtors elect to Reinstate in accordance with **Article III.B** of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Debtor and its successors and assigns. The release of the Liens securing the DIP ABL Claims shall be subject to (i) the indefeasible payment in full in cash of each Allowed DIP ABL Claim and (ii) receipt by the DIP ABL Agent of a payoff letter in form and substance satisfactory to the DIP ABL Agent.

## CC. Liabilities to the United States.

95. As to the United States of America, its agencies, departments, or agents (collectively, the "United States"), nothing in the Plan or Confirmation Order shall limit or expand the scope of discharge, release or injunction to which the Debtors or the Reorganized Debtors are entitled to under the Bankruptcy Code, if any. The discharge, release and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar the United States from, subsequent to the Confirmation Order, pursuing any police or regulatory action.

96. Accordingly, notwithstanding anything contained in the Plan or Confirmation Order to the contrary, nothing in the Plan or Confirmation Order shall discharge, release, impair or otherwise preclude: (i) any liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (ii) any Claim of the United States arising on or after the Confirmation Date; (iii) any valid right of setoff or recoupment of the United States against any of the Debtors or the Reorganized Debtors; or (iv) any liability of the Debtors or Reorganized Debtors under police or regulatory statutes or regulations to any Governmental Unit (as defined by section 101(27) of the Bankruptcy Code) as the owner, lessor, lessee or operator of property that such entity owns, operates, or leases after the Confirmation Date. Nor shall anything in this Confirmation Order or the Plan: (i) enjoin or otherwise bar the United States or any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence; or (ii) divest any court, commission, or tribunal of jurisdiction to determine whether any liabilities asserted by the United States or any Governmental Unit are discharged or otherwise barred by this Confirmation Order, the Plan, or the Bankruptcy Code.

97. Moreover, nothing in the Confirmation Order or the Plan shall release or exculpate any non-debtor, including any Released Parties or Exculpated Parties, from any liability to the United States, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws, nor shall anything in this Confirmation Order or the Plan enjoin the United States from bringing any claim, suit, action or other proceeding against the Released Parties or Exculpated Parties for any liability whatsoever; *provided, however*, that the foregoing sentence shall not limit the scope of discharge granted to the Debtors

under sections 524 and 1141 of the Bankruptcy Code.

98. Nothing contained in the Plan or Confirmation Order shall be deemed to determine the tax liability of any person or entity, including but not limited to the Debtors and the Reorganized Debtors, nor shall the Plan or Confirmation Order be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in this Plan or Confirmation Order be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under 11 U.S.C. § 505.

## DD. Cancellation of Existing Securities and Agreements.

99. On the later of (i) the Effective Date or (ii) the indefeasible payment in full in cash of the Prepetition ABL Obligations and DIP ABL Obligations, except to the extent otherwise provided in the Plan, the DIP ABL Documents, the DIP Term Loan Documents, the Prepetition ABL Documents, the Prepetition Term Loan Documents, the Unsecured Notes Indenture and all notes, instruments, certificates, agreements, indentures, and other documents evidencing Claims or Interests related to any of the foregoing shall be deemed cancelled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or any Holder or other person and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full and discharged, and the DIP Term Loan Agent, the DIP ABL Agent, the Prepetition Agents and the Unsecured Notes Indenture Trustee shall have no further obligations or duties thereunder; *provided, however,* that notwithstanding Confirmation or Consummation, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of (i) allowing Holders to receive distributions under the Plan; (ii) allowing Holders of Claims to retain their respective rights and obligations vis-à-vis other Holders of Claims pursuant to any applicable loan or other documents; (iii) allowing the Servicers to enforce their rights, claims, and interests vis-à-vis any party other than the Debtors; (iv) allowing the Prepetition Agents, DIP Agents and the Unsecured Notes Indenture Trustee to make the distributions in accordance with the Plan (if any), as applicable; (v) preserving any rights of the Servicers to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the Holders under the Unsecured Notes Indenture, the Prepetition Term Loan Documents, the Prepetition ABL Loan Documents and the DIP Documents, including any rights to priority of payment and/or to exercise charging liens; (vi) allowing the Servicers to enforce any obligations owed to them under the Plan; (vii) allowing the Servicers to exercise rights and obligations relating to the interests of the Holders under the Prepetition Loan Documents, the DIP Documents and the Unsecured Notes Indenture, as applicable; (viii) allowing the Servicers to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court; and (ix) permitting the Servicers to perform any functions that are necessary to effectuate the foregoing; *provided, further, however,* that except as provided below, the preceding proviso shall not affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or affect any of the release, third-party release, Exculpation or injunction provisions contained in **Article VIII** of the Plan, or result in any expense or liabil-

ity to the Reorganized Debtors, as applicable; *provided, further,* that the foregoing shall not affect the issuance of New Equity issued pursuant to the Restructuring Transactions nor the treatment of Intercompany Interests pursuant to **Article III** of the Plan.

## EE. Registration Exemptions

100. Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Equity, as contemplated by the Plan, shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act, and any other applicable United States, state, or local law requiring registration prior to the offering, issuance, distribution, or sale of securities. Such Section 1145 Securities will not be "restricted securities" (as defined in Rule 144(a)(3) under the Securities Act) and will be freely tradable and transferable by any initial recipient thereof that (x) is not an "affiliate" of the Reorganized Debtors (as defined in Rule 144(a)(1) under the Securities Act), (y) has not been such an "affiliate" within 90 days of such transfer, and (z) is not an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code.

101. Notwithstanding the Plan, the New Equity distributed under the Plan will not be eligible upon the Effective Date for listing through the facilities of DTC. To the extent the New Equity distributed under the Plan will be reflected through the facilities of DTC, the Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of such New Equity under applicable securities laws. If applicable, DTC shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether such New Equity is exempt from registration and/or eligible for DTC's book-entry delivery, settlement, and depository services. Notwithstanding anything to the contrary in the Plan, no Entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether such New Equity is exempt from registration and/or eligible for DTC's book-entry delivery, settlement, and depository services.

## FF. Return of Deposits.

102. All utilities, including any Person that received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases (collectively, the "Deposits"), whether pursuant to the *Order (I) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Services, (II) Determining Adequate Assurance of Payment for Future Utility Services, (III) Establishing Procedures for Determining Adequate Assurance of Payment, and (IV) Granting Related Relief* [Docket No. 508] or otherwise, including, gas, electric, telephone, data, cable, trash, and sewer services, are directed to return such Deposits to the Reorganized Debtors, either by setoff against postpetition indebtedness or by Cash refund, within thirty (30) days following the Effective Date.

## GG. The Mississippi Department of Revenue.

103. Notwithstanding anything in the Plan or this Confirmation Order to the contrary: (i) the Mississippi Department of Revenue's (the "MDOR") setoff rights under section 553 of the Bankruptcy Code and recoupment rights are preserved; (ii) the MDOR shall not be required to file any proofs of claim or requests for payment in

the Chapter 11 Cases for any Administrative Claims for the liabilities described in section 503(b)(1)(B) and (C) of the Bankruptcy Code (collectively, the "MDOR 503(b) Liabilities"), the Debtors or Reorganized Debtors, as applicable, shall timely submit returns for and remit payment of any MDOR 503(b) Liabilities, and, should the Debtors or Reorganized Debtors fail to so timely file returns for and remit payment of any MDOR 503(b)(9) Liabilities, MDOR may proceed with Mississippi state law remedies for collection of any MDOR 503(b)(9) Liabilities due and/or seek such relief as may be available from this Court (subject to the Debtors' and Reorganized Debtors' (as applicable) rights and defenses under Mississippi state law and the Bankruptcy Code; (iii) to the extent the MDOR's Priority Tax Claims, if any, are not paid in full in cash on the Effective Date, such Priority Tax Claims shall, at a minimum, be paid by regular, quarterly installment payments in Cash over a period not to exceed five years after the date of the order for relief under section 301 of the Bankruptcy Code, all as required section 1129(a)(9)(C) of the Bankruptcy Code, along with interest in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code; (iv) the MDOR may timely amend any Proof of Claim against any Debtor after the governmental Claims Bar Date, or the Effective Date, whichever is later, with respect to (i) a pending audit, or (ii) an audit that may be performed, with respect to any pre- or post-petition tax return; and (iii) in the event of a default in payment of Priority Tax Claims of the MDOR as provided for herein, the MDOR shall send written notice of default to the Debtors or Reorganized Debtors, as applicable, to the address in MDOR's records, and to their counsel, *provided* that if such default is not cured within 15 business days after such notice of default is mailed, the MDOR may (i) enforce the entire amount of its claim; (ii) proceed with Mississippi state law remedies for collection of any amounts due and/or (iii) seek such relief as may be available from this Court.

## HH.  Local Texas Tax Authorities

104. Notwithstanding any other provisions in the Plan or the Exit Financing, the Class 1 Other Secured Claims of the Certain Texas Tax Authorities (as defined in the DIP Order) that are secured by Prior Permitted Liens (as defined in the DIP Order) shall retain their liens on the funds reserved from the Store Closing Sales (as defined in the DIP ABL Agreement) with the same validity, extent and priority as existed prior to the entry of the Confirmation Order. To the extent these claims are Allowed Claims, they shall be paid timely pursuant to applicable non-bankruptcy law, and if not timely paid they shall be entitled to interest from the Petition Date through the Effective Date and from the Effective Date through the date of payment at the applicable statutory rate as permitted by Bankruptcy Code sections 506(b), 511 and 1129.

## II.  Michigan Department of Treasury

105. Notwithstanding any other provisions in the Plan or this Confirmation Order, to the extent that any Allowed Priority Tax Claim of the Michigan Department of Treasury (the "MDOT") is not paid on the Effective Date or when Allowed in lump sum in accordance with section 1129(a)(9)(C)(i) of the Bankruptcy Code, the MDOT shall notify the Debtors, after which the Debtors and the MDOT may agree that such Allowed Priority Tax Claim shall be paid in regular installments over no more than 5 years from the Petition Date in accordance with section 1129(a)(9)(C)(ii) of the Bankruptcy Code, with interest accruing at the appropriate statutory rate.

106. Upon the failure of the Debtor(s) to make timely payment on any Allowed Claim of the Michigan Department of Treasury in accordance with the Plan and this Confirmation Order, which is not cured within 15 days of the mailing of a written notice of default by the MDOT, the MDOT may exercise all rights and remedies available under non-bankruptcy law for the collection of the relevant Allowed Claim. Notwithstanding any provision to the contrary in this Confirmation Order, the Disclosure Statement, the Plan or any Plan document, nothing shall (a) affect the ability of the State of Michigan to pursue to the extent allowed by nonbankruptcy law any nondebtors for any liabilities that may be related to any tax liabilities owed by the Debtors to the State of Michigan; or (b) affect the rights of the State of Michigan to assert setoff and recoupment rights under applicable law. The Debtors agree that they will timely file or cause to be filed all required state tax returns and shall otherwise comply with the provisions of the State of Michigan Tax Code.

## JJ. Effect of Confirmation Order on Other Orders.

107. Unless expressly provided for herein, nothing in the Plan or this Confirmation Order shall affect any orders entered in the Chapter 11 Cases pursuant to section 365 of the Bankruptcy Code or Bankruptcy Rule 9019.

## KK. Inconsistency.

108. In the event of any inconsistency between the Plan (including the Plan Supplement) and this Confirmation Order, this Confirmation Order shall govern. To the extent any provision of any final Plan Supplement document may conflict or is inconsistent with any provision in the Plan, the terms of the final Plan Supplement' document shall govern and be binding and exclusive.

## LL. Injunctions and Automatic Stay.

109. Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court, and extant on this Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect through and including the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

## MM. Authorization to Consummate.

110. The Debtors are authorized to consummate the Plan and the Restructuring Transactions at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to consummation set forth in **Article IX** of the Plan.

## NN. Substantial Consummation.

111. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

## OO. No Waiver.

112. The failure to specifically include any particular Plan Document or provision of the Plan or Plan Document in this Confirmation Order will not diminish the effectiveness of such document or provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety, the Plan Documents (including, but not limited to, the Plan Supplement, the Disclosure Statement, the Disclosure Statement Order, the Interim

DIP Order, the Final DIP Order, the DIP ABL Documents, the DIP Term Loan Documents, the Exit ABL Credit Facility Documents, the Exit Term Loan Credit Facility Documents, the New Organizational Documents, and the documents that are Definitive Documentation (as defined in the Restructuring Support Agreement)) are approved in their entirety, and all the documents are incorporated herein by this reference.

## PP. Severability.

113. Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable in accordance with its terms; (ii) integral to the Plan and may not be deleted or modified except in accordance with **Article X.A** of the Plan; and (iii) nonseverable and mutually dependent.

## QQ. Effect of Non–Occurrence of Effective Date.

114. If the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement, compromise, release, waiver, discharge, or exculpation embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and without legal effect; and (iii) nothing contained in the Plan or the Disclosure Statement shall: (x) constitute a waiver or release of any Claims or Interests; (y) prejudice in any manner the rights of the Debtors or any other Person or Entity; or (z) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## RR. Debtors' Actions Post–Confirmation Through the Effective Date.

115. During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate its business as a debtor in possession, subject to the oversight of this Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of this Court that is in full force and effect.

## SS. Dissolution of the Creditors' Committee.

116. On the Effective Date, the Creditors' Committee shall dissolve, and the members of the Creditors' Committee and their respective officers, employees, counsel, advisors and agents shall be released and discharged from further authority, duties, responsibilities and obligations related to and arising from and in connection with these Chapter 11 Cases; *provided*, that following the Effective Date the Creditors' Committee shall continue in existence and have standing and a right to be heard solely to pursue Professional Fee Claims in accordance with **Article II.B** of the Plan. Following the completion of the remaining duties of the Creditors' Committee set forth above, the retention or employment of the Creditors' Committee's respective attorneys, accountants, and other agents shall terminate. The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Creditors' Committee after the Effective Date.

## TT. Conditions to Effective Date.

117. The Plan shall not become effective unless and until the conditions set forth in **Article IX** of the Plan have been satisfied

or waived pursuant to **Article IX.C** of the Plan.

### UU.  Waiver of 14–Day Stay.

118. Notwithstanding Bankruptcy Rule 3020(e), this Confirmation Order is effective immediately and not subject to any stay.

### VV.  Post–Confirmation Modification of the Plan.

119. Without the need for further order or authorization of the Court, the Debtors or the Reorganized Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan (subject to any applicable consents or consultation rights set forth therein) and the Restructuring Support Agreement (subject to any applicable consents or consultation rights set forth therein). Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions on modifications set forth in the Plan and the Restructuring Support Agreement, the Debtors and the Reorganized Debtors expressly reserve their respective rights to revoke or withdraw, or to alter, amend, or modify materially the Plan with respect to such Debtor, one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.A of the Plan and subject to the terms of the Restructuring Support Agreement.

### WW.  Miscellaneous.

120. Nothing in this Confirmation Order shall be deemed to (a) grant or authorize liens on the Debtors' leasehold interests in real property or (b) grant or authorize rights in Debtors' leasehold interests in real property to any party in a manner inconsistent with applicable law.

### XX.  Final Order.

121. This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

### YY.  Retention of Jurisdiction.

122. The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code. To the extent it is not legally permissible for the Court to have exclusive jurisdiction over any of the foregoing matters, the Court shall have non-exclusive jurisdiction over such matters to the fullest extent legally permissible. Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the Court's retention of jurisdiction shall not govern the enforcement of the Exit Credit Facilities or the documents executed in connection therewith or any liens, rights, or remedies related thereto, the New Organizational Documents except to the extent that this Confirmation Order has been vacated or reversed, but instead, such enforcement shall be governed as set forth in the applicable Exit Credit Facilities Documents

and the New Organizational Documents, as applicable.

Prepared by: Kirkland & Ellis LLP (counsel to the Debtors and Debtors in Possession)

Pittsburgh, Pennsylvania

Exhibit 1

**Plan of Reorganization**

Please refer to Document No. 695

Exhibit 2

**Confirmation and Effective Date Notice**

Attachment

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In re: rue21, inc., *et al.*,[5] Debtors.

rue21, inc., *et al.*, Movants,

v.

Official Committee of Unsecured Creditors, *et al.*[6], Respondent.

Case No. 17–22045 (GLT)

Chapter 11

(Jointly Administered)

Related to Docket No. 315, 316, 695, 697, 844

5. The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: rue21, inc. (1645); Rhodes Holdco, Inc. (6922); r services llc (9425); and rue services corporation (0396). The location of the Debtors' service address is: 800 Commonwealth Drive, Warrendale, PA 15086.

6. The other respondents are: PREIT Services, LLC, The State of Michigan, Department of Treasury, Aronov Realty Management, Brixmor Property Group, Inc., ShopOne Centers REIT, Inc., UBS Realty Management, and Weitzman Management Corporation, Los Lunas Investors, LLC CBL & Associates Management, Inc., Bloomfield Holdings, LLC, IREIT Louisville Dixie Valley, L.L.C., IREIT West Valley City Lake Park, L.L.C., Yuma Palms LeaseCo, L.L.C., Honey Creek DST, IRC Bradley Commons, L.L.C., IRC Goldenrod Marketplace II, L.L.C., IRC Stone Creek, L.L.C., IRC Timmerman Plaza, L.L.C., KRG Aiken Hitchock, LLC, KRG Plaza Green, Leeds Retail Center, LLC, Duluth (Gwinnett) SSR, LLC, 3503 RP Jackson Columns, L.L.C., 3503 RP Summerville Azalea Square, L.L.C., 3503 RP Waco Central Limited Partnership, Inland Western Spartanburg, L.L.C., RPAI Lakewood, L.L.C., RPAI Mansfield Limited Partnership, RPAI McDonough Henry Town, L.L.C. and WHLR–Village of Martinsville, LLC, Bloomfield Holdings, LLC, 3503 RP Jackson Columns, L.L.C., 3503 RP Waco Central Limited Partnership, RPAI Lakewood, L.L.C., and RPAI McDonough Henry Town, L.L.C., ARC NPHUBOH001, LLC, Centennial Real Estate Company, LLC, C.E. John Company, Inc., Deutsche Asset & Wealth Management, Foursquare Properties, Inc., Gem Realty Capital, Inc., KRE Colonie Owner, LLC, The Macerich Company, PGIM Real Estate, Southgate Mall Associates, LLP, Starwood Retail Partners LLC, and Vintage Real Estate, LLC, Coventry III/Satterfield Helm Valley Fair, LLC, Mt. Pleasant Shopping Center, LLC, Adrian Acquisition, LLC, Merle Hay Investors, LLC, and Capital Mall JC 1, LLC, Surprise Marketplace Holdings, Weingarten Realty Investors, Weingarten 1–4 Clermont Landing, LLC, WRI Alliance Riley Joint Venture, and WRI Mueller, LLC, Experian Marketing Solutions, Inc., Landlords DDR Corp., DLC Management Corp., GGP Limited Partnership, Gregory Greenfield & Associates Ltd., Jones Lang LaSalle Americas, Inc., Northwest Capital Investment Group, LLC, Regency Centers Corp., Rouse Properties, LLC, ShopCare Properties, LP, and Woodmont Companies, Winthrop Resources Corporation, Spinoso Real Estate Group, Washington Prime Group Inc.

130

NOTICE OF (I) ENTRY OF ORDER CONFIRMING THE DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) OCCURRENCE OF EFFECTIVE DATE

TO ALL CREDITORS, INTEREST HOLDERS, AND OTHER PARTIES IN INTEREST:

PLEASE TAKE NOTICE that an order [Docket No. [●]] (the "Confirmation Order") confirming the *Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (as may be modified, the "Plan"), was entered by the Honorable Gregory L. Taddonio, United States Bankruptcy Judge, and docketed by the Clerk of the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") on [●], 2017. Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order.

PLEASE TAKE FURTHER NOTICE that copies of the Confirmation Order, the Plan, and the related documents, are available on this Court's website at http://www.pawb.uscourts.gov and free of charge on www.kccllc.net/rue21. To access this Court's website, you will need a PACER password and login, which can be obtained at http://www.pacer.psc.uscourts.gov.

PLEASE TAKE FURTHER NOTICE that the Effective Date occurred on September [7], 2017.

PLEASE TAKE FURTHER NOTICE that, unless otherwise provided by the Plan, the Confirmation Order, any other applicable order of the Bankruptcy Court, or agreed to by the holder of an Allowed Administrative Claim and the Debtors, all requests for Payment of Administrative Claims, other than Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code which were required to be Filed by the Bar Date, must be Filed and served on the Debtors **no later than October [7], 2017** (the "Administrative Claims Bar Date"). Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, or their property and such Administrative Claims shall be deemed discharged as of the Effective Date.

PLEASE TAKE FURTHER NOTICE that, unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based upon the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed with the Notice and Claims Agent **on or before the later of the date that is thirty (30) days after (i) notice of the Effective Date; or (ii) the date on which the Reorganized Debtors remove an Executory Contract or Unexpired Lease from the Assumed Executory Contract and Unexpired Lease Schedule on or after the Effective Date pursuant to Article V.A of the Plan, as applicable (the "Rejection Date");** *provided, however,* **that the Rejection Date with respect to any Unexpired Lease of non-residential real property shall not occur until the date the Debtors relinquish control of the premises by notifying the affected landlord in writing of the Debtors' surrender of the premises and (x) turning over key, key codes, and security codes, if any, to the affected landlord, or (y) notifying the affected landlord in writing that the keys, key**

codes, and security codes, if any, are not available, but the landlord may rekey the leased premises.

PLEASE TAKE FURTHER NOTICE that the Plan and its provisions are binding on the Debtors, the Reorganized Debtors, any holder of a Claim against, or Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder or Entity voted to accept the Plan.

Dated: [●], 2017

/s/ Draft

Jonathan S. Henes, P.C. (admitted pro hac vice)
Robert A. Britton (admitted pro hac vice)
George Klidonas (admitted pro hac vice)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Counsel to the Debtors and Debtors in Possession*

Eric A. Schaffer (PA I.D. # 30797)
Jared S. Roach (PA I.D. # 307541)
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, Pennsylvania 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063

*Local Counsel to the Debtors and Debtors in Possession*